## IN THE SUPREME COURT OF THE STATE OF IDAHO

### Docket No. 33637

STATE OF IDAHO,

    Plaintiff-Respondent,

v.

JOSHUA ALLEN ROSE,

    Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, September 2007 Term

2007 Opinion No. 107

Filed: October 19, 2007

Stephen W. Kenyon, Clerk

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. The Honorable Thomas F. Neville, District Judge.

The decision of the district court is affirmed.

Molly J. Huskey, State Appellate Public Defender, Boise, for appellant. Sara Thomas, Deputy Appellate Public Defender, argued.

Lawrence G. Wasden, Attorney General, Boise, Daniel Bower, Deputy Attorney General, argued.

_____

JONES, W., Justice.

Joshua Rose appeals from the district court's order revoking probation. Rose claims he was denied an opportunity to confront adverse witnesses because the district court admitted hearsay at the evidentiary hearing on whether he violated the terms of his probation. The Court of Appeals affirmed, concluding that the Sixth Amendment right of confrontation as set forth in *Crawford v. Washington*, 541 U.S. 36 (2004) does not apply to probation revocation proceedings, and that the lesser confrontation right afforded as a matter of due process under *Morrissey v. Brewer*, 408 U.S. 471 (1972) and *Gagnon v. Scarpelli*, 411 U.S. 778 (1973) was not

violated. This Court granted review as to whether *Crawford* applies to a probationer's due process right of confrontation.

In 2002 Rose was convicted of one felony and two misdemeanors. He received a suspended sentence of six years with one year fixed and was placed on probation for six years. In August 2004 Rose was found to have violated his probation.[1] The district court ordered some additional jail time and reinstated probation. Rose was released from jail in September 2004.

Upon his release, Rose went to live in a home for persons recovering from drug and alcohol addiction. On October 28 or 29, 2004 Rose was evicted from the home after he tested positive for methamphetamines, marijuana, and cocaine in a urinalysis administered by the housing coordinator. Rose then moved into his grandmother's home.

In January 2005 the state filed a motion alleging that Rose had violated the terms of his probation by changing residences without permission, using methamphetamine, using cocaine, and absconding from supervision. After an evidentiary hearing the district court found that Rose had committed several violations. The district court revoked Rose's probation and ordered his original sentence into execution. This appeal concerns evidence admitted at the evidentiary hearing.

At the evidentiary hearing, Rose's probation officer testified that she began supervising Rose in December 2004 after the previous probation officer was deployed to the war in Iraq. She testified at length regarding the contents of the previous officer's notes in the probation file. According to her testimony, the notes reflected that Rose did not immediately contact his probation officer following his eviction from the recovery home. Rose objected, asserting that the probation officer's testimony regarding the prior officer's notes violated his right to confrontation under the Fourteenth Amendment. The district court overruled the objection, finding that the notes were reliable and that the right of confrontation does not apply to a probation revocation proceeding. On cross-examination, Rose requested to review the notes. The district court suggested that if Rose had questions about what was reflected in the notes he could simply ask the probation officer.

---

[1] Documents relating to August 2004 probation violation, which is not part of this appeal, were submitted as a confidential exhibit. There are no exhibits relating to the proceedings under review.

The Probation officer also testified about her own experience supervising Rose. She first met Rose on December 23, 2004 when he was living with his grandmother and was under a 10:00 p.m. curfew. On January 7, 2005 she received an email bulletin from the police department stating that Rose had been seen waiting for a taxi to take him to a motel. According to the probation officer, she contacted Rose's grandmother, who stated she had not seen Rose for three days, and Rose's girlfriend and her mother, who both stated they did not know Rose's whereabouts. Rose objected, and the district court again overruled, finding that any concerns about hearsay went to the weight of the evidence rather than admissibility. The probation officer testified that she then went to the motel and was informed by the front desk attendant that Rose had been staying there several days previously. The probation officer testified she was never informed by Rose that he was not staying at his grandmother's house.

The housing coordinator testified that he administered a urinalysis pursuant to standard procedure after he was informed by staff members that Rose was not observing the recovery home's curfew. When Rose stated he had not used any controlled substances, the housing coordinator administered a second urinalysis which yielded the same positive result. On cross-examination, Rose questioned the housing coordinator whether Rose had informed the coordinator he was taking Zyprexa, an antipsychotic medication. The housing coordinator testified that he always asked test subjects whether they have taken any medications, and that he would call a pharmacist if he was unsure whether a particular substance might cause a false positive. According to the housing coordinator, his notes did not indicate that Rose had mentioned taking any medications or that he had called a pharmacist.

Rose testified that he had used neither methamphetamine nor cocaine after his release, but that he had been taking Zyprexa during that period. According to Rose, the housing coordinator never asked about medications when he administered the urinalyses.

Rose also testified that he stayed at his grandmother's house every night from the time he moved in until he was arrested on January 21, 2005. Rose's grandmother testified that, on the day she was contacted by the probation officer, Rose had gotten angry and left without his belongings. She did not think he had moved out, but after that date she could not recall whether Rose was ever in the house before she went to bed.

The state recalled the probation officer, who testified about a telephone call she had placed to a laboratory that processed urinalyses for the Department of Probation and Parole. She

3

testified that, according to the laboratory technician she spoke with, Zyprexa would not affect the results of a urinalysis for methamphetamine or cocaine. Rose objected based on the right to confrontation, and the district court overruled.

At the close of the evidence the state dropped its allegation that Rose failed to obtain permission to change residences when he was evicted from the recovery home, and proceeded on the remaining allegations. After both sides presented argument, the district court found that Rose had committed the violations alleged by the state. With respect to the allegations of methamphetamine and cocaine use, the district court found that the urinalyses results were valid and that Zyprexa was not likely to have interfered with the result. The district court also found that Rose had absconded from supervision on or about January 7, 2005 by failing to remain at his grandmother's house. After another hearing the district court revoked probation and ordered Rose's original sentence into execution.

Rose appealed, arguing that he was denied an opportunity to confront the witnesses against him because the probation officer was allowed to testify as to the contents of the previous officer's notes, the email bulletin, the statements of Rose's grandmother, girlfriend, and girlfriend's mother, and the opinion of the laboratory technician. The Court of Appeals affirmed, concluding that the Sixth Amendment right of confrontation as set forth in *Crawford v. Washington*, 541 U.S. 36 (2004) does not apply to probation revocation proceedings, and that the lesser confrontation right afforded as a matter of due process under *Morrissey v. Brewer*, 408 U.S. 471 (1972) and *Gagnon v. Scarpelli*, 411 U.S. 778 (1973) was not violated. This Court granted review as to whether the decision in *Crawford* applies to a probationer's right to confront and cross-examine witnesses in a revocation hearing.

On review of a case decided by the Court of Appeals, this Court gives serious consideration to the views of the Court of Appeals, but directly reviews the trial court's decision. *State v. Klingler*, 143 Idaho 494, 495-96, 148 P.3d 1240, 1241-42 (2006); *State v. Russell*, 122 Idaho 488, 490, 835 P.2d 1299, 1301 (1992).

A court may not revoke probation without a finding that the probationer violated the terms of probation. *State v. Blake*, 133 Idaho 237, 243, 985 P.2d 117, 123 (1999); *see* I.C. §§ 19-2603, 20-222. The state bears the burden of providing satisfactory proof of a violation though proof beyond a reasonable doubt is not required. *State v. Kelsey*, 115 Idaho 311, 314, 766 P.2d 781, 784 (1988). Once a probation violation has been proven, the decision of whether to revoke

4

probation is within the sound discretion of the court. *Blake*, 133 Idaho at 243, 985 P.2d at 123; *State v. Done*, 139 Idaho 635, 636, 84 P.3d 571, 572 (Ct. App. 2003). The finding of a probation violation must be on verified facts and the trial court's exercise of discretion must be informed by an accurate knowledge of the probationer's behavior. *State v. Tracy*, 119 Idaho 1027, 1028, 812 P.2d 741, 742 (1991).

The trial court's factual findings in a probation revocation proceeding, including a finding that a violation has been proven, will be upheld if they are supported by substantial evidence. *Russell*, 122 Idaho at 490, 835 P.2d at 1301; *State v. Knutsen*, 138 Idaho 918, 923, 71 P.3d 1065, 1070 (Ct. App. 2003). The decision to admit evidence at a probation revocation proceeding is within the trial court's discretion, and will not be overturned absent an abuse of that discretion. *See State v. Jeppesen*, 138 Idaho 71, 75-76, 57 P.3d 782, 786-87 (2002) (admission of evidence at sentencing hearing is discretionary). However, the determination whether constitutional requirements have been satisfied is subject to free review. *Klingler*, 143 Idaho at 496, 148 P.3d at 1242.

The first issue is whether *Crawford v. Washington* altered the rule in *Morrissey v. Brewer* that a probationer's right of confrontation may be denied for good cause. Rose claims he did not receive due process at the evidentiary hearing because he was denied an opportunity to confront the witnesses against him. According to Rose, the admission of his probation officer's hearsay testimony violated the rule announced in *Crawford* and rendered the proceeding fundamentally unfair.

Probationers do not enjoy the full panoply of constitutional protections afforded criminal defendants. *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972); *State v. Edelblute*, 91 Idaho 469, 475, 424 P.2d 739, 745 (1967); *see also Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (applying *Morrissey* to probationers). A motion to revoke probation is not a criminal prosecution. *Gagnon*, 411 U.S. at 782, 93 S.Ct. at 1759-60; *State v. Crowe*, 131 Idaho 109, 112, 952 P.2d 1245, 1248 (1998). Consequently, the Sixth Amendment's Confrontation Clause, which grants to criminal defendants the right to confront adverse witnesses, does not apply to probationers. *U.S. v. Hall*, 419 F.3d 980, 985 (9th Cir. 2005) (citing *Morrissey*, 408 U.S. at 480); *see State v. Moore*, 93 Idaho 14, 17, 454 P.2d 51, 54 (1969) (recognizing circumstances under which a probationer may be denied confrontation). Likewise, the Idaho Rules of Evidence, including the

5

rule against hearsay, do not apply to probation revocation proceedings. I.R.E. 101(e)(3); *Tracy*, 119 Idaho at 1028 n.1, 812 P.2d at 742 n.1.

Still, a probationer has a protected liberty interest in continuing probation, and is therefore entitled to due process before probation may be revoked. *Blake*, 133 Idaho at 243, 985 P.2d at 123; *Kelsey*, 115 Idaho at 314, 766 P.2d at 784. In *Morrissey v. Brewer* the Court established minimum due process requirements for probation and parole revocation proceedings under the Fourteenth Amendment. 408 U.S. at 489; *see also Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (applying *Morrissey* to probationers). Among other protections, a probationer has the "right to confront and cross-examine adverse witnesses" unless the district court "specifically finds good cause for not allowing confrontation." *Morrissey*, 408 U.S. at 489; *State v. Chapman*, 111 Idaho 149, 151, 721 P.2d 1248, 1250 (1986).

Rose argues that the good cause exception recognized in *Morrissey* is no longer valid after the Court's 2004 decision in *Crawford v. Washington*, which held that a criminal defendant may not be denied the right to confront an out-of-court declarant whose statement is "testimonial" in nature, even if the statement is deemed reliable. 541 U.S. at 68-69. In *Crawford*, the Court rejected the rationale of *Ohio v. Roberts*, 448 U.S. 56 (1980), which suggested that confrontation could be denied so long as the challenged hearsay bore "adequate indicia of reliability." *Id*. at 66. The Court explained that the concept of reliability was so amorphous and its application so unpredictable that even "core confrontation violations" could meet with approval under the old standard. *Crawford*, 541 U.S. at 62-63. The Court stated:

> [W]e do not think the Framers meant to leave the Sixth Amendment's protection to the vagaries of the rules of evidence, much less to amorphous notions of "reliability." Certainly none of the authorities discussed above acknowledges any general reliability exception to the common-law rule. Admitting statements deemed reliable by a judge is fundamentally at odds with the right of confrontation. To be sure, the Clause's ultimate goal is to ensure reliability of evidence, but it is a procedural rather than a substantive guarantee. It commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination. The Clause thus reflects a judgment, not only about the desirability of reliable evidence (a point on which there could be little dissent), but about how reliability can best be determined.
>     . . .

> Dispensing with confrontation because testimony is obviously reliable is akin to dispensing with jury trial because a defendant is obviously guilty. This is not what the Sixth Amendment prescribes.

*Id.* at 61. The Court rejected the possibility of an "open-ended exception from the confrontation requirement to be developed by the courts," *id*. at 54, holding that the Sixth Amendment right of confrontation applies to every testimonial statement admitted against a criminal defendant, regardless of whether the statement is deemed reliable. *Id*. at 61.

According to Rose, *Crawford*'s rejection of *Roberts* forecloses the notion that confrontation may be denied based on a judicial determination as to how important confrontation would be to the defendant. Rose concedes that the Sixth Amendment right of confrontation does not apply to probation revocation proceedings, but argues that the holding of *Crawford* applies with equal force to a probationer's due process right of confrontation. According to Rose, the Due Process Clause, like the Confrontation Clause, is a procedural rather than a substantive guarantee, and the judicial determination of reliability necessary to evaluate good cause is no substitute for the procedural protections guaranteed by the Constitution. Thus, argues Rose, a probationer's confrontation rights as a matter of due process are necessarily coextensive with those of a criminal defendant under the Sixth Amendment.

Rose's argument misconceives the basis of the Court's holding in *Crawford*. As the passage set forth above demonstrates, the holding was explicitly grounded in the text of the Sixth Amendment. *See Crawford*, 541 U.S. at 54 ("The text of the Sixth Amendment does not suggest any open-ended exceptions . . . ."); *id*. at 69 ("[T]he only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation."). The Court noted that the uncertainty inherent in a reliability-based standard "vindicates the Framers' wisdom" in imposing a procedural, rather than a substantive, requirement in the Sixth Amendment. *Id*. at 62-63. But to say that it was wise in one context does not establish that it is mandated in another. Due process does not require that probationers be granted an absolute right of confrontation, but only a limited right, subject to denial for good cause. *Morrissey*, 408 U.S. at 489. Nothing in *Crawford* indicates that the due process standard set out in *Morrissey* is no longer valid.

On the contrary, "due process is flexible in scope, and the reliability it demands necessarily invites inquiry into the circumstances surrounding the evidence sought to be admitted

7

and whether it possesses enough earmarks of reliability." *Young v. United States*, 863 A.2d 804, 808 (D.C. 2004) (quoting *Morrissey*, 408 U.S. at 481) (internal quotations omitted). A probation decision involves an individualized evaluation of the probationer's personality and circumstances. *State v. Russell*, 122 Idaho 488, 491, 835 P.2d 1299, 1302 (1992) (quoting *Moore*, 93 Idaho at 17, 454 P.2d at 54). The process must be flexible enough to consider evidence that might not be admissible in a criminal prosecution. *State v. Farmer*, 131 Idaho 803, 806, 964 P.2d 670, 673 (Ct. App. 1998). A court is presumed to be able to ascertain the relevancy and reliability of the broad range of information and material presented to it and to disregard the irrelevant and unreliable. *State v. Jeppesen*, 138 Idaho 71, 75, 57 P.3d 782, 786 (2002) (citing *State v. Pierce*, 100 Idaho 57, 593 P.2d 392 (1979)).

Other jurisdictions that have decided the question appear to be unanimous that *Crawford* does not change the due process standard for confrontation in a probation revocation hearing. *See United States v. Williams*, 443 F.3d 35, 45 (2d Cir. 2006); *United States v. Kelley*, 446 F.3d 688, 691 (7th Cir. 2006); *Ash v. Reilly*, 431 F.3d 826, 829-30 (D.C. Cir. 2005); *United States v. Rondeau*, 430 F.3d 44, 47-48 (1st Cir. 2005); *United States v. Hall*, 419 F.3d 980, 985-86 (9th Cir. 2005), *cert. denied*, 126 S.Ct. 838 (2005); *United States v. Kirby*, 418 F.3d 621, 627-28 (6th Cir. 2005); *United States v. Martin*, 382 F.3d 840, 844 n.4 (8th Cir. 2004); *Young v. United States*, 863 A.2d 804, 807-08 (D.C. 2004); *Reyes v. State*, 868 N.E.2d 438, 440 n.1 (Ind. 2007); *Com. v. Wilcox*, 841 N.E.2d 1240, 1247-48 (Mass. 2006); *State v. Divan*, 724 N.W.2d 865, 870 (S.D. 2006); *State v. Abd-Rahmaan*, 111 P.3d 1157, 1160-61 (Wash. 2005); *see also People v. Johnson*, 18 Cal. Rptr. 3d 230, 232 (Cal. Ct. App. 2004); *People v. Turley*, 109 P.3d 1025, 1026 (Colo. Ct. App. 2004); *Jackson v. State*, 931 So.2d 1062 (Fla. Dist. Ct. App. 2006); *State v. Palmer*, 158 P.3d 363, 367 (Kan. App. 2007); *State v. Michael*, 891 So.2d 109, 114-15 (La. App. 2 Cir. 2005); *State v. Gonzalez*, 157 P.3d 266, 267 (Or. App. 2007); *State v. Pauling*, 639 S.E.2d 680, 682 (S.C. App. 2006); *Trevino v. State*, 218 S.W.3d 234, 238-39 (Tex. App. 2007). The only contrary authority cited by Rose, *Ash v. Reilly*, 354 F. Supp. 2d 1 (D.D.C. 2004), has since been reversed. 431 F.3d 826 (D.C. Cir. 2005).

*Crawford* may be said to apply to probation revocation proceedings in the sense that it defines what confrontation is. *See Johnson*, 18 Cal. Rptr. 3d at 232 (stating that Sixth Amendment cases may provide "helpful examples" in determining the scope of a probationer's more limited due process right of confrontation). But it says nothing about whether, or when,

8

confrontation may be denied. The minimum due process requirements announced by the Court in *Morrissey* are still good law. A probationer may be denied confrontation upon a specific finding of good cause. In the present case, the evidence supports the findings of the trial court under the *Morrissey* standard.

The district court did not commit reversible error by allowing hearsay evidence at the parole revocation hearing. The district court's decision is affirmed.

Chief Justice EISMANN, Justices BURDICK, J. JONES and TROUT, J. Pro Tem **CONCUR.**